[No. 20595.   Department One.   August 18, 1927.]

MARY J. THOMAS, as *Administratrix of the Estate of Mary E. Smith, Deceased, Appellant,* v. FRANCETTE P. MARING, *Individually and as Executrix of the Estate of William L. Smith, Deceased, Respondent.*[1]

[1] GIFTS (8)—EVIDENCE—SUFFICIENCY. The burden of showing that deeds, executed by one sister to another, were without fraud or undue influence, is sustained by proof that the grantor, the oldest of three children living together in harmony, was capable of transacting business, had long intended to carry out the transaction, according to her will made to the same effect, and knowing that she probably had not long to live and would be taken care of until her death.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered October 16, 1926, in

[1]Reported in 258 Pac. 465.

favor of the defendant, in an action for conversion, tried to the court. Affirmed.

*Poe, Falknor, Falknor & Emory,* for appellant.

*Chadwick, McMicken, Ramsey & Rupp,* for respondent.

MAIN, J.—The controversy in this case is over the right to possession of property, both real and personal. The plaintiff claims title to the possession as administratrix with the will annexed of the estate of Mary E. Smith, deceased. The defendant asserts right to the possession as the executrix of the estate of William L. Smith, deceased. The cause was tried to the court without a jury, and resulted in findings supporting the position of the defendant. From the judgment entered dismissing the action, the plaintiff appeals.

Mary E. Smith and Alice M. Smith were sisters and William L. Smith was their brother. No one of them was ever married. For many years, they resided as a family in Seattle and, prior to moving to Seattle, they had resided in the city of Portland. The two sisters, and especially Mary, were thrifty and accumulated some property. William was a miner, and did not accumulate property of any consequence, so far as the record shows. These parties lived together, as stated, for many years and were very much attached to each other. They lived very much to themselves and, as one or two of the witnesses testified, so much so that some of the neighbors at times thought them a little different from other people. Mary looked after the house and took roomers. She also at one time worked as a seamstress. Alice gave music lessons.

On March 20, 1922, Mary conveyed to Alice by two deeds the real property which she then owned in Seattle as well as that owned in the city of Olympia. A few days later and on March 23 or 24 of the same

year, Mary transferred her bank account to Alice. On April 5, 1922, Alice made a will devising and bequeathing all the property to William. Alice died on March 29, 1923, at the age of sixty-five. Her will was duly probated and, thereafter, the bank account was transferred to William's name alone. William died on October 16, 1923, at the age of seventy-five. Prior to his death, he made a will by which all the property was devised and bequeathed to Francette P. Maring, in trust for the support of his sister Mary during her lifetime, and at her death, it was to go to Mrs. Maring as her own property. After the death of William, his will was admitted to probate, and the property in controversy was inventoried as a part of his estate. Mary died on November 16, 1923, at the age of eighty-one. After the death of William and prior to the death of Mary, Mrs. Maring cared for the latter as the will directed.

The controlling question in the case is, whether Mary Smith, at the time she made the deeds mentioned and transferred the bank account to Alice, was competent to transact business. Upon this question, a considerable number of witnesses was offered by the respective parties. Their testimony was in conflict. The trial court, after hearing the testimony, was of the opinion that Mary, at the time she made the deeds and transferred the bank account, was competent to transact business and that the transactions were free from the taint of fraud, undue influence or overreaching. After giving careful consideration to all the evidence, we are of the opinion that the trial court reached the correct conclusion upon the question of fact presented. It would serve no useful purpose here to undertake to review the testimony and, in fact, it is too voluminous to be reviewed within the compass of an opinion of reasonable length.

[1] It is said, however, that the trial court applied the wrong rule of law in determining upon which side lay the burden of proof. Neither the memorandum opinion of the trial court nor the findings indicate the view that the burden was upon the appellant to show fraud, undue influence or overreaching or the lack of competency. However, if the rule of the cases of *Hemrich v. Hemrich,* 117 Wash. 124, 201 Pac. 10, and *Meyer v. Campion,* 120 Wash. 457, 207 Pac. 670, be applied, to the effect that, where a fiduciary relation exists and property is transferred without adequate consideration, the burden is upon the party seeking to sustain the transfer to show that there was not fraud, undue influence or overreaching in the transaction, the result would be the same. While it is true that Mary, at the time she made the transfer to Alice, was old and had an affliction which occasionally made her talkative and affected her physically, when these spells would pass away, she was rational and capable of transacting business, as the witness who had been the family physician for many years testified. The transfer of the property to Alice apparently carried out a view which Mary had long entertained. Many years before her death, she had made a will to the same effect. Mary, at the time of the transfers, undoubtedly knew that she could not live many years and probably would die, being the older of the three, before either Alice or William. The relations were such that she knew she would be taken care of by her brother and sister, so long as they should live. Under all the circumstances of the case, the transaction was a reasonable one. As we view the evidence, the respondent sustained the burden that Mary, at the time of the transfers, was competent, and that there was no fraud, undue influence or overreaching.

As to the bank stock, consisting of ten shares of the par value of $100 per share in the Wallowa National Bank of Enterprise, Oregon, that was first acquired by Mary many years ago and, on September 26, 1891, was by her transferred to Alice. It stood in the latter's name from that time until after the death of Alice, and the dividends that accumulated from time to time were deposited in the same bank to her credit. After all these years, we think it should not be held that Alice did not own the stock, based upon general statements of witnesses as to what they remembered Mary saying with reference to it from time to time.

The judgment will be affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and FULLERTON, JJ., concur.